THE HARRISON, NEW TRENTON, ROCHESTER, AND BROOKVILLE TURNPIKE COMPANY and Another *v.* ROBERTS.

ACTION TO RECOVER REAL PROPERTY.—*Pleading.*—In an action to recover the possession of real estate, the fact that in one paragraph of the complaint the plaintiff seeks to recover, together with the property claimed in another paragraph, other property taken possession of by the defendant at a different time and under different circumstances, is not a good reason for striking out that portion in relation to such additional claim or the paragraph containing it.

SAME.—*Description of Real Estate.*—A complaint against a turnpike company to recover possession of real estate described a portion of the property as "all that part of the south-west quarter of section 33, township 9, in range 2 west, in," &c. (naming the county in which the action was brought), "on which is located and constructed the turnpike road and toll-house, of said company"; and described another portion by metes and bounds, "commencing at the south-east corner of said toll-house and running thence east eight and one-half feet," &c., "to the place of beginning."
*Held,* that the descriptions were sufficient.

TURNPIKE.—*License.*—When a legally organized turnpike company has located and constructed its road upon land by the verbal license of the owner of the land, the company is entitled to the possession of the roadway, notwithstanding the fact that damages were not assessed or paid nor any other consideration given for the right of way.

SAME.—*Toll-House.*—Where, in such case, a toll-house has been erected outside of the roadway, by the license of the owner of the land to use the ground for a toll-house temporarily, such owner or his vendee may recover possession of the ground on which the toll-house is erected, upon his giving the company reasonable notice of the termination of such license, although the toll-house be within the distance from the center of the road to which, under the statute, the company might have condemned the land for a roadway.

PRACTICE.—*Trial Without Reply.*—Where a defendant, without asking a rule for a reply or calling the attention of the court to the fact that no reply has been filed, voluntarily goes to trial as though the facts alleged in his answer had been denied, it is too late after he has been beaten on the trial upon the merits to raise the objection that a reply was not filed.

APPEAL from the Franklin Circuit Court.

This was an action by Roberts against The Harrison, New Trenton, Rochester, and Brookville Turnpike Company and Lewis Riggs, to recover the possession of real estate.

The complaint was in four paragraphs, but a demurrer was sustained to the second.

The first paragraph is in the usual form, and seeks to recover possession of "all that part of the south-west quarter of section thirty-three, township nine, in range two west, in Franklin county, on which is located and constructed the turnpike road and toll-house of said company."

The third and fourth also claim to recover the same portion of the roadway and the ground on which the toll-house is situated. The latter is described as "commencing eighteen feet from the center of the road, and running thence along the same twenty-seven feet west, thence twelve feet north, thence twenty-seven feet east, thence south twelve feet, to the place of beginning." They also include two other strips of ground, one of which is described as "commencing at the south-east corner of the toll-house, and running thence east eight and one-half feet, thence north twenty-six feet, thence west eight and one-half feet, thence south twenty-six feet to the place of beginning." The other is described as "commencing at the south-west corner of the toll-house and running thence west along the road sixty-one feet, thence north twenty-six feet, thence east sixty-one feet, and thence south twenty-six feet to the place of beginning." These paragraphs allege, that, in 1852, when the turnpike company constructed its road over the quarter section of land described, the land was owned in fee by one Richard Tyner, and that the road was so constructed, and the toll-house erected, by the verbal leave and license of said Tyner, given without any consideration whatever, and that the plaintiff is now the owner in fee of said land, deriving his title thereto through said Tyner; and that the defendants hold possession of the other strips of land without any right or authority whatever.

The turnpike company filed an answer of three paragraphs. But the first, a general denial of the complaint, was subsequently withdrawn.

The second paragraph is an argumentative denial of the

plaintiff's right to recover the roadway and toll-house grounds, and claims the same by donation from Tyner; the former owner of the land. It denies that the company had possession of the two strips, and disclaims any right or claim to them.

The third paragraph is the same as the second, except that it alleges a consideration for the donation and grant by Tyner of the roadway and ground for the toll-house. Reply in denial of both paragraphs.

Riggs answered in two paragraphs, first, a denial of the allegations of the complaint; second, that he is in possession of the toll-house under the turnpike company, as its collector of tolls at that place. It admits that he is in possession of the two small strips of ground described in the complaint, but alleges that it is by the leave and license of the plaintiff, which has not expired or been revoked by him. There was no reply to this last paragraph.

The jury who tried the cause returned a verdict in substance as follows: As to so much of the land claimed by the plaintiff as is occupied by the turnpike company's roadway, they found for the defendants. As to that part of the land in controversy on which is situated the toll-house, they found for the plaintiff as against the turnpike company, and assessed the damages at thirty dollars; and as to that portion of the land, they found for the defendant Riggs. As to the parcels of land described as adjoining the toll-house, they found for the plaintiff as against the defendant Riggs, and for the turnpike company, and assessed the damages against Riggs at five dollars.

A motion for a new trial being overruled, Riggs moved the court for a judgment in his favor on the verdict of the jury, for the toll-house and grounds, which was overruled, and the ruling was excepted to.

The turnpike company then moved the court for a judgment in its favor, as to the ground occupied by the toll-house, notwithstanding the verdict of the jury, because, as to that, the finding is for the defendant Riggs, the tenant in posses-

sion; and also for the alleged reason that the only valid cause of action in the third and fourth paragraphs of the complaint is for the strips of ground adjoining the toll-house, as to which the jury found for said turnpike company; which motion was also overruled.

A motion was also made by each of the appellants for a judgment for all costs, which was overruled; and judgment was rendered against the appellants, in accordance with the verdict of the jury, and for costs.

ELLIOTT, J.—Numerous questions are presented in this case, which will be examined in the order in which they are presented in the brief for the appellants.

1. The first is that the court erred in refusing to strike out the third and fourth paragraphs of the complaint, on the appellant's motion. There was no error in this. These paragraphs cover not only the same land, the roadway and toll-house grounds described in the first paragraph, but also the two additional strips adjoining. All might have been included in the first paragraph, and thereby very greatly abbreviated the complaint, which by numerous paragraphs and much unless matter is rendered inexcusably voluminous; but as the plaintiff sought by the third and fourth paragraphs to recover land not included in the first, the court did right in overruling the motion to strike out. The third and fourth paragraphs are, in substance, the same, and both cover the whole property in controversy, and the court would have been clearly justified in striking out the whole complaint, excepting only either the third or fourth paragraph. No substantial injury, however, could have resulted to the appellant by the overruling of such a motion, had it been interposed, and the judgment would not be reversed for such an error.

It is argued by the appellants that the additional claim set up in the third and fourth paragraphs is for ground taken possession of at a different time, and under different circumstances, and has no connection with the cause of

action stated in the first paragraph, and should not be united with it. This is an erroneous view of the case. The substance of the whole complaint is this: that, at the commencement of the suit, the plaintiff was the owner and entitled to the possession of the ground occupied by the road, the toll-house, and the two strips adjoining; that the appellants were in the possession thereof and unlawfully withheld the same from the plaintiff. It could make no difference, if the appellants were in possession as alleged, how or when the possession was acquired, the simple question presented was, did the appellants unlawfully withhold it from the plaintiff, at the commencement of the suit?

2. The court overruled a motion to strike out so much of the third and fourth paragraphs of the complaint as claims to recover the two strips of ground described therein, adjoining the toll-house, and this ruling is complained of. The ruling was correct.

3. Overruling the demurrer to the first, third, and fourth paragraphs of the complaint, is assigned for error. The first paragraph is good, at least so far as it seeks to recover the ground occupied by the toll-house; and the third and fourth paragraphs are good, for the recovery, at least, of the two strips adjoining the toll-house. These paragraphs admit that the turnpike company was a legally organized corporation, and constructed its road over the land now held by the plaintiff, in 1852, and has ever since maintained it on the same location; and that it was so located over said land by the leave and license of Tyner, who was then the owner of the land.

The turnpike company had the right to appropriate so much of the land as was necessary for the roadway, by paying the damages occasioned thereby, and if, as the third and fourth paragraphs admit, the road was located and constructed upon the land which the plaintiff now seeks to recover, by the verbal license of the then owner of the land, the right of the company to the possession of the roadway would be absolute; and the fact that damages were not as-

sessed or paid or any other consideration given for the right of way, would not affect the company's right of possession; and hence the third and fourth paragraphs do not show any cause of action in the plaintiff for the recovery of the ground occupied by the road.

But it is urged that the complaint does not contain such a description of the ground in controversy as to enable the sheriff to locate it. We think otherwise. The road and toll-house are visible objects, and need no further description than that contained in the complaint, and they form the monuments for the commencing point in the description by metes and bounds of the other grounds claimed in the complaint.

4. The court struck out a portion of the second paragraph of the answer of the appellant Riggs, and this ruling is complained of. The part stricken out was an averment that the road and toll-house belonged to the turnpike company. It was not material to the affirmative defense attempted to be set up by that part of the answer that alleges that he, Riggs, was in possession of the strips of ground adjoining the toll-house by the leave and license of the plaintiff, which had not expired or been revoked. Indeed, the whole answer is rather an argumentative denial that he unlawfully withheld the possession of the property from the plaintiff, and was fully covered by the general denial, and the whole paragraph might, with propriety, have been rejected.

5. The next point raised is, that the finding and judgment, under the pleadings, should have been in favor of the appellant Riggs, as to the ground adjoining the toll-house, because there was no reply filed to the second paragraph of his answer, which set up a right to the possession thereof by the leave and license of the plaintiff, which had not expired or been revoked, and that the facts so alleged must, therefore, be deemed to be admitted.

From what has just been said in reference to the second paragraph of Riggs' answer, we are not prepared to say

that a reply was necessary. But however that may be, Riggs, without asking a rule against the plaintiff to reply to the answer, or in any manner calling the attention of the court to the fact that no reply had been filed, voluntarily went to trial upon the facts alleged, as though they were denied; and it was too late, under several recent decisions of this court, after he was beaten on the trial upon the merits, to raise the objection that a reply was not filed.

6. On the trial, the plaintiff's right to recover the ground on which the toll-house is situated was made to turn on the question whether Tyner, who owned the land at the time, and by whose permission the toll-house was built thereon, gave such permission for the permanent location of the toll-house, or only temporarily, and for a limited period.

The plaintiff introduced evidence tending to show that the directors of the company, when the toll-house was built, only placed it at the point in controversy temporarily, intending to move it to another site off of Tyner's land, as soon as the road was completed, and that Tyner only gave permission for its location on his land temporarily and for a limited time. The appellants had taken the deposition of Tyner, in which was the following interrogatory and answer thereto: "Question 10. State what your intention was as to the ground you permitted them (the turnpike company) to occupy for said toll-house?" "Answer. I did not reflect much about it, but suppose I intended them to occupy the ground as long as it was needed for toll-house and gate." On the plaintiff's motion this question and answer were suppressed, and the ruling is assigned for error. We cannot say that the question and the answer to it were improperly suppressed. The point in controversy was as to the agreement between the parties in reference to the ground on which the toll-house was built; but the question asked Tyner is not what was the agreement or understanding between him and the company, but what was his intention as to the matter.

The mere unexpressed intention of Tyner could confer no authority on the company. And the answer is still further from the point. It does not even state the intention entertained at the time. The witness says he did "not reflect much about it," but then states what he now supposes was his intention. The answer is too uncertain and indefinite to be entitled to any consideration as evidence upon the question involved in the case.

7. On the trial of the cause, one William Shanks was introduced and examined as a witness by the plaintiff, and was permitted to testify, over the objection of the appellants, that, in 1852 or 1853, he was present at a meeting of the board of directors of the company, of which Tyner was a member, at the store of Tyner, in Brookville, or at the store of Chambers, in Cedar Grove, and heard Tyner and the members of the board say that the location of the toll-house where it then was, and still is, was not a permanent one; that it was placed there for the convenience of the company, but would be moved up to Stavetown, to catch the Blue Creek travel. The correctness of this ruling is also questioned. The evidence was clearly admissible. The directors were the legal representatives of the corporation. The conversation testified to was had at an official meeting of the directors. Tyner, on whose land the toll-house was erected, was a director, and present at the meeting, and it occurred in a comparatively short time after the toll-house was built, and amounted to an admission, by the directors, as well as Tyner, that the toll-house was placed on Tyner's ground temporarily, and would be moved to another place.

8. The court also permitted the plaintiff, Roberts, to testify, over the appellants' objection, as follows: "I was present at the meeting of the board at the time Tyner authorized the erection of the toll-house. The board had met to arrange for building toll-house and letting the road. They had selected a spot close to a spring. Mr. Tyner asked if it would annoy me to build the toll-house there. This was at a meeting of the board at my house.

I told him I was a mere tenant of his place; if it annoyed me, I could leave the place. He remarked that he did not intend to have any thing placed there that would annoy his tenants, and that it was his building spot that he expected to build on some day. The directors did not seem to think they wanted the house there permanently; that they thought the house would be better situated at the Blue Creek crossing, after the completion of the road into town. This was about all that was said about it. Mr. Tyner said he could not have it there as a permanent location; that he expected to build a house near the spring."

The admission of the evidence is urged as an error. The objection made to it on the trial was, that it was improper evidence. It is claimed in argument here, that it detailed a conversation between the plaintiff and Tyner, in the absence of the directors of the company. We do not so understand the record. The whole conversation, as we understand it, occurred at the same time, and was held between Tyner and the other directors at a meeting of the board. It is further urged that the statement, that "the directors did not seem to think they wanted the house there permanently; that they thought the house would be better situated at the Blue Creek crossing," &c., was not stating any thing said by the directors, but an attempt to state what they thought. It was, doubtless, intended as a statement of the purport or substance of what was said by the directors, but couched in loose and careless language. But the statement was not material, and could not have injured the appellants. The real question in controversy was, whether Tyner consented to or licensed the erection of the toll-house there permanently, or only temporarily; and it was his statements to the directors on that subject, as detailed by the witness, that formed the material part of the evidence, and was properly admitted.

9.   There was no error in the refusal of the court to permit the appellants to read in evidence certain extracts from the records of the turnpike company, one directing notice

that sealed proposals would be received for the erection of a toll-house near Tyner's lock, and another recording the acceptance of one of said bids. The evidence was properly rejected, for the simple reason that it was entirely irrelevant, and could not have had even a remote bearing on any question in controversy in the case.

10. The court voluntarily instructed the jury, in reference to the ground on which the toll-house is located, that the company was authorized by its charter to condemn land for its roadway, by legal proceedings, of such width as the directors deemed advisable, not exceeding sixty feet, or might procure the same by contract with the owner; and if the company constructed its road over the land of Tyner by his verbal license, and if there is no evidence that any definite width was agreed upon or taken by the company, it must be presumed that the company took only so much as was used in constructing the road. So much it can hold under the verbal license, but no more. And if the land was thus taken for the roadway, and if the toll-house was located within the limits of the land so taken, the plaintiff cannot recover. But if the house was placed outside the limits of the roadway, then the plaintiff is entitled to recover the ground, unless the company holds it by a license from Tyner; that under its charter the company could condemn ground for a toll-house, but Tyner could waive that, and license the occupancy of the ground for that purpose; and if he granted such license without limit, as to time, and the company erected the toll-house pursuant thereto, the the plaintiff cannot recover; but if it was a license to use the ground only temporarily, then upon reasonable notice to the company of the termination of the license, it would cease; and if Roberts has given such notice he should recover that part of the ground.

It is contended that the court erred in instructing the jury under the state of facts upon which that part of the charge is hypothecated, that if the toll-house was placed outside the limits of the roadway, then the plaintiff is en-

titled to recover the ground, unless the company holds it by a license from Tyner.

The argument in support of the objection is, that although there was no condemnation of the roadway by legal proceedings, and the road was constructed over the land then owned by Tyner, by his verbal license, without any agreement as to the width, and though only from thirty to thirty-six feet in width was used or occupied by the roadway proper, still, as the company had the right to condemn sixty feet in width, and the toll-house ground would be covered by thirty feet from the center of the road, it must be presumed that, at that particular point, the company used and appropriated under the license the ground on which the toll-house stands, as a part of the roadway.

This argument is without any substantial foundation to rest upon. The evidence clearly shows that the toll-house stood outside of the ground used as a roadway, and was so understood by the company and Tyner, and hence its erection at that point was made the subject of a special license; it was never claimed by the company as being within the limits of the roadway. Besides, the instruction is based on the hypothesis that it was outside of the roadway, and whether it was or was not was a question of fact for the jury, and there is no legal presumption arising in the case to override the facts.

11. An objection is urged to a part of an instruction given by the court to the jury, in reference to the strips of land claimed by the plaintiff adjoining the toll-house, to which the company disclaimed any interest.

That part of the instruction objected to was, in substance, that if the plaintiff had given in evidence a deed conveying the land to him which includes those strips, that would *prima facie* entitle him to the possession; and if Riggs was in the possession of the strips, not claiming under the turnpike company, but under the plaintiff, the jury should find for the plaintiff as to them, against Riggs, unless he has shown a right to such possession.

It is contended that the instruction changed the burden of proof from the plaintiff to the defendant Riggs, and required of the latter, who was in possession, to prove his right thereto, instead of requiring the plaintiff to prove his right to possession. But this is so clearly an erroneous construction of the instruction of the court that comment upon it is unnecessary. The instruction was correct.

12. We think the verdict of the jury is sustained by the evidence, and fully disposes of the case. One paragraph of Riggs' answer was a general denial of all the allegations of the complaint. He was the mere agent of the turnpike company, and as such his possession of the toll-house was the possession of the company; and as to that the jury did right in finding for Riggs and against the company.

But the turnpike company did not claim the strips adjoining the toll-house, and was not in possession of them; but they were in the individual possession of Riggs. So it appears by the evidence. And as the jury, in effect, found that Riggs' possession was unlawful, and the plaintiff entitled thereto, the finding for the company as to those strips, and against Riggs, was correct. The failure of the plaintiff to reply to the second paragraph of Riggs' answer is urged as a reason why the verdict is erroneous. But as that question has been disposed of in a previous part of this opinion, it need not be noticed further.

13. The several motions, first, by Riggs for a judgment in his favor for the toll-house and grounds; second, by the turnpike company for a judgment in its favor, *non obstante verdicto;* and third, by each of the appellants for all costs, were correctly overruled.

The judgment is affirmed, with costs.

*T. B. Adams* and *F. Berry*, for appellants.

*C. C. Binkley*, for appellee.